(February 12, 1910.)

## C. L. BROWN et al., Respondents, v. CITIZENS' STATE BANK, LTD., Appellant.

[107 Pac. 405.]

ESCROW AGREEMENT—HOLDER OF—BANK CASHIER—DELIVERY OF ESCROW —LIABILITY OF BANK.

1. *Held,* under the facts of this case, that the escrow was deposited with the bank for delivery upon terms stated in escrow agreement, and that the bank delivered the same contrary to the provisions of such agreement and is liable.

(Syllabus by the court.)

APPEAL from the District Court of the Fourth Judicial District, for Elmore County. Hon. Edward A. Walters, Judge.

Action to recover for violation of escrow agreement. Judgment for plaintiffs. *Affirmed.*

W. C. Howie, for Appellant.

Such a transaction as this cannot be a bank matter, but purely a personal matter of the cashier, one in which the cashier acts as agent for the parties depositing the money and not as agent for the bank. (*United States v. City Bank of Columbus,* 21 How. (U. S.) 356, 16 L. ed. 130; *North Star Boot & Shoe Co. v. Stebbins,* 2 S. D. 74, 48 N. W. 833; *Lloyd v. West Branch Bank,* 15 Pa. 172, 53 Am. Dec. 581; *Thatcher v. State Bank,* 5 Sandf. (N. Y.) 121; *Jones v. First National Bank,* 3 Neb. (Unof.) 83, 90 N. W. 912; *Burris v. Bank of Buffalo,* 70 Mo. App. 675; *Tulley v. Citizens' State Bank,* 18 Ind. App. 240, 47 N. E. 850; *White v. Comonwealth,* Fed. Cas. No. 17,544.)

This being a gratuitous escrow, the bank will not be liable for Mr. Cannon's wrong, if any there was. (*Merchants' National Bank v. Guilmartin,* 88 Ga. 797, 15 S. E. 831, 17 L. R. A. 322; *First Nat. Bank v. Dunbar,* 118 Ill. 625, 9 N. E. 186; *Sturges v. Veith,* 57 Ill. 451, 11 Am. Rep. 28.)

J. G. Watts, for Respondents, cites no authorities.

SULLIVAN, C. J.—This is an action to recover from the defendant, who is appellant, the sum of $1,500 in cash and a promissory note for $1,700, which it is alleged were deposited with the appellant bank as an escrow deposit.

It appears from the record that C. L. Brown, one of the respondents, sometime in February, 1908, was negotiating with the Great Western Beet Sugar Company at Mountain· Home for the purchase of a water right and the assignment of a certain desert land entry of eighty acres of land near Mountain Home; that after the terms of the escrow agreement had been agreed to, and O. E. Cannon, cashier of the Citizens' Bank of Mountain Home, had been sent for by Mr. Garrett, the representative of the sugar company, to come and sign the escrow agreement and receipt for the $1,500 paid and the said promissory note, the following agreement was entered into:

"Received from C. L. Brown, of Bellingham, Wash., the sum of Fifteen Hundred Dollars, the same being the first payment upon the purchase of a water right to 80 acres of land as per a contract this day entered into between him and the Great Western Beet Sugar Company, a Washington corporation, doing business at Mountain Home, Idaho.

"The land in question is the SW. ¼ of the NW. ¼ and the NW. ¼ of the SW. ¼ of Section 8, Township 4 South, Range 7 East of Boise Meridian, in Elmore County, Idaho, and it is understood that the same has been filed upon by Mrs. Adolph Aus., of Mountain Home, Idaho, under the Desert Land Act. It is understood and agreed that Mrs. Adolph Aus is to deposit with me, as Cashier of the Citizens' State Bank, Ltd., of Mountain Home, Idaho, the Desert Land receipt to be issued to her by the United States Land Office at Boise, Idaho, covering the entry as above described, and upon the 15th day after the date of such Desert Land Entry receipt she is to turn over to me her assignment, properly executed, conveying the said entry and the rights thereunder to said C. L. Brown or A. B. Estabrook.  I will write to the Register of the United States Land Office to ascertain if the entry and assignment are regular and will be recognized by said Land Office, and upon re-

ceipt of a favorable reply to that effect, will send to C. L. Brown at Bellingham, Wash., by registered letter, the above mentioned Land Office receipt and assignment, and at that time I will pay to the Great Western Beet Sugar Company, or its order, the said sum of $1500.00.

"It is further understood and agreed that the said C. L. Brown will, within fifteen days after this date, send to me his promissory note, signed also by A. B. Estabrook, for the sum of $1700.00, due and payable to the said Great Western Beet Sugar Company, on or before February 12, 1909, which said note I will surrender to said Great Western Beet Sugar Company at the time I turn over the $1500.00 in cash as above provided, or when the validity of the entry and assignment hereinbefore referred to has been proven to my satisfaction. Said Great Western Beet Sugar Company is to place with this bank in escrow a deed covering the above water right, which I am to surrender to said C. L. Brown when the above-mentioned note is paid.

"Dated at Mountain Home, Idaho, February 12, 1908.

"O. E. CANNON,

"Cashier Citizens' State Bank, Limited."

It also appears that it was represented to Brown that Mrs. Adolph Aus, of Mountain Home, had entered said land under the desert land act of the United States, and that an assignment of her entry would be made to Brown; that said Cannon was to write to the register of the United States land office at Boise City to ascertain if said desert entry and assignment were regular and would be recognized by said office, and upon receipt of a favorable reply he would send to C. L. Brown at Bellingham, Washington, by registered letter, the receipt and assignment. This was not done, for the reason that Mrs. Aus. had never entered said land under the desert land laws of the United States, or otherwise.

It also appears that within five days after said escrow agreement was made, the said cashier turned over to the sugar company the $1,500 deposited with said bank subject to said escrow agreement, and also turned over said promissory

note for $1,700 to either the sugar company or one Wilcox who, it appears, had some dealings with the sugar company.

It also appears from the record that the sugar company undertook to scrip the eighty acres of land referred to, and entered into an agreement with said Wilcox for that purpose on August 17, 1908. Said Garrett and his wife entered into a written agreement with said Wilcox. One stipulation of said agreement is as follows, to wit: "The said L. T. Wilcox agrees to purchase approved land scrip and apply it upon the said land, endeavoring thereby to secure title for the said Estabrook and Brown, which title shall remain in said L. T. Wilcox until the said Estabrook and Brown pay their said note above described. The remainder of said note, after deducting the price of the scrip therefrom, shall be credited to the said John H. and Allie G. Garrett upon their notes above described, and all equity in the said land above described, and the improvements thereon shall be held by the said L. T. Wilcox as security for the payment of the balance on the said notes of John H. and Allie G. Garrett. . . . ."

Counsel for appellant contends that even though Mrs. Aus. had never entered said land as a desert claim, that if Garrett, as manager of the sugar company, procured title to said land by scripping it under the above-mentioned contract with Wilcox, that was a sufficient compliance with the terms of said escrow agreement, and that the respondents must take such title as might be procured by scripping said land in lieu of a title procured as contemplated by the escrow agreement.

It will be observed from that portion of the Wilcox contract above quoted that Wilcox was to hold the title to said land as security for the payment of said $1,700 note and also for a balance due on the Garrett promissory notes. This was. not contemplated by the original agreement and Brown and Estabrook had not agreed to any change therein. There is, nothing in the contention of counsel for appellant that the respondents must accept any kind of title that Garrett or the sugar company might give to them under the provisions of said escrow agreement. The escrow agreement was entered into on February 12, 1908. It was known by Garrett, the manager

of the sugar company, that title to said land could not be procured in the manner that the respondents had been led to believe that it could be procured, to wit, by assignment of Mrs. Aus' desert entry. Said manager, so far as the record shows, made no effort to procure title thereto by scripping it or otherwise, until the 17th of August, 1908—more than six months after said escrow agreement was made. Within five days after said agreement was made, the said $1,500 and the note were delivered, contrary to the provisions of said escrow agreement, to the beet sugar company—a very reckless way of doing business, to say the least. This no doubt was procured to be done by the manager of the sugar company; at least, after it was done, he accepted the benefits of it. That kind of sleight-of-hand performance or dishonest dealing will not be countenanced by this court.

But it is contended that the cashier of said bank had no authority as cashier to enter into said escrow agreement. While he may not have had any direct authority to take charge of escrows, he had been in the habit of doing so and the officers of the bank had never made any objection thereto. The evidence clearly establishes the fact that the deposit was made with Cannon as cashier of the bank, and that it was customary for the bank to receive escrow deposits and no objection whatever was made thereto. The president of the bank testified as follows: "We never made any objection to our cashiers taking these escrow agreements." Mr. Cannon testified: "I presume I accepted that escrow and understood that I was accepting it and that money as cashier of the bank." The receipt for the deposit was signed by "O. E. Cannon, Cashier Citizens' State Bank, Ltd." We think this fully disposes of the contention of counsel for appellant to the effect that the deposit was made with Cannon as an individual and not as cashier of the bank. As cashier of the bank he received the deposit; as cashier of the bank he transferred the deposit of $1,500 cash to the sugar company, and delivered said promissory note to the sugar company or to Wilcox for the sugar company.

The escrow agreement entered into by the cashier did not require him to obtain said receiver's receipt or the assign-

ment.  These were to be deposited with him, and when deposited, the only act he was required to perform was to determine their regularity by writing to the land office at Boise. If regular, the contract provided what disposition should be made of the money and note.  This certainly was not an unusual thing for the cashier to do.  In many escrow agreements, the cashier is required to determine when the performance provided for in the escrow agreement takes place, so as to entitle the escrow matter to be delivered.  That was substantially all that the cashier was required to do in this case— to determine when the performance of the thing required to be performed took place so as to entitle the escrow matter to be delivered.

Under sec. 3 of art. 3 of the by-laws of said bank, the cashier is required to deliver to the person or persons authorized to receive the same, moneys, funds or valuables left with the bank, and if he fails to do so, the bank is liable to the party aggrieved, and as the cashier delivered said cash and note to the sugar company when it was not entitled to receive them, the bank is liable therefor.

However, counsel contends that there is no provision in said escrow agreement requiring the bank to return said money and promissory note to respondents in case of a failure of the agreement made between the sugar company and the respondents in regard to said eighty acres of land.  This we think is a mere quibble, and deserves no consideration whatever. Would counsel contend that the bank may keep the money and note if the sugar company is not entitled to them?  Or that it must go to the sugar company whether it complies with its contract or not?  The contract clearly contemplated that if there was a failure of consideration, the money and note must be returned to the respondents.  It is a part of the history of banking in this state that banks or the officers thereof are anxious to get legitimate banking business, and that escrow agreements bring banks a great deal of business, and escrow agreements generally are deposited in banks because the people believe that the banks are responsible for the money or funds deposited with them or under their terms.  In the case

at bar it clearly appears from the record that the respondents made the deposit with the cashier of said bank as an officer of the bank, believing that the bank was responsible for the safe-keeping and the delivery of said money and note in accordance with the provisions of said escrow agreement. Said agreement contemplated an early and speedy compliance with its provisions, and it devolved upon the sugar company to proceed at once and carry out its contract with the respondents in regard to said land, which it failed to do, and did not undertake to procure title to said land until more than six months after said escrow was made, and then undertook to encumber said land with the payment of the $1,700 note. But it was ready, eager and willing to have said cash placed to its credit and the note taken from the possession of the escrow holder long before it was entitled to either. The laws of our state are intended to promote justice, and our courts should not permit gross injustice to be done upon some mere technicality.

It appears from the record that counsel for appellant, at the time respondents demanded a return of the money and note from the bank, objected to returning them on the ground that the bank did not have the consent of the other parties, the Great Western Beet Sugar Company or Garrett, or both. It appears from the record that counsel for appellant was present at the time the respondents demanded a return of the money and note from the bank, and that no objection or contention was made at that time that the money and note had not been deposited with the bank. The only objection raised at that time to returning the money and note was on the ground that the bank and its counsel had not the consent of the Great Western Beet Sugar Company or Garrett. There was no claim made at that time that the bank was not liable or that the bank had not received the escrow. That contention was evidently an afterthought.

Counsel also contends that the money deposited was not mingled with the bank's funds, but was kept separate and by itself, and that that was evidence that it was not a bank transaction. Under the escrow agreement the bank had no

authority to mingle the $1,500 deposit with its general fund. It was not made as a general deposit, but was to be held by the bank until the conditions of the escrow were performed, and until those conditions were performed the bank had no authority to deliver the money or the note to the sugar company or to anyone else.

It also appears from the evidence that said land was scripped by the Northern Pacific Railway Company and was not assigned to Wilcox until January 5, 1909, thus showing that Wilcox had no title at the time the alleged tender of the land was made. The record also shows that no patent was issued under said scrip entry, and until the patent is issued the land department may, on certain grounds, refuse to issue the patent.

Aside from all this, under the provisions of said escrow agreement, respondents could not be compelled to accept any title to said land except such as they had contracted to take. The authorities cited upon the proposition, that when one contracts to procure a certain title to land and convey it to another and fails to do so, he may procure a different title and compel the purchaser to take it, have no application whatever to the facts of this case.

We conclude that the deposit of said $1,500 in cash and said promissory note of $1,700 was made with the appellant bank; that the bank is liable therefor; and that the judgment appealed from must be *affirmed*, and it is so ordered. Costs in favor of *respondents*.

Ailshie, J., concurs in the conclusion.

STEWART, J., Concurring Specially.—I concur in the conclusion reached by Chief Justice Sullivan that the judgment in this case should be affirmed. The action, as I view it, is to recover upon the receipt and contract made by O. E. Cannon, cashier of the Citizens' State Bank, Ltd. By the provisions of that receipt, Cannon, as cashier of the bank, received from Brown, one of the respondents, the sum of $1,500 as part payment upon the purchase of a water right

to certain land, under a contract entered into between Brown and the Great Western Beet Sugar Company. The lands are described in this receipt and contract, and it is stated that it is understood that Mrs. Adolph Aus had filed upon the same as a desert land entry, and that Mrs. Aus was to deposit with the cashier of the Citizens' State Bank the desert land receipt to be issued to her by the United States land office at Boise, Idaho, covering said entry, and upon the fifteenth day after the date of such desert land entry receipt, she was to turn over to Cannon, cashier of the Citizens' State Bank, her assignment properly executed conveying the said entry and the rights thereunder to Brown or Estabrook, respondents. Cannon, as such cashier, then agrees that he will write to the register of the United States land office to ascertain if the entry and assignment are regular and will be recognized by said land office, and upon receipt of a favorable reply to that effect, will send to Brown by registered letter the above-mentioned land office receipt and assignment, and at that time he agrees to pay over to the Great Western Beet Sugar Company, or its order, the said sum of $1,500. It was further agreed in such receipt and contract that Brown, within fifteen days after the date of the contract, to wit, February 12, 1908, would send to Cannon, the cashier of said bank, his promissory note, signed also by Estabrook, for the sum of $1,700, due and payable to the said Great Western Beet Sugar Company on or before February 12, 1909, which note was to be surrendered to the Great Western Beet Sugar Company at the time the $1,500 in cash was turned over, or when the validity of the entry and assignment of the desert land entry had been proven to the satisfaction of Cannon; and that the Great Western Beet Sugar Company was to place in the bank in escrow a deed covering the above water right which was to be surrendered to Brown when the note was paid. Under this contract, the $1,500 in cash was to be paid to the Great Western Beet Sugar Company upon Mrs. Aus making an assignment of her desert land entry and the approval of the same by the land office and its transmission to Brown, and the note

was to be surrendered to the Great Western Beet Sugar Company at the same time.

It is conceded in this case that Mrs. Aus never had a desert land entry upon said tract, and that she never made any assignment of her entry to Brown, and that the same was never approved by the land office and never transmitted to Brown; and under the terms of this contract Cannon had no authority and was not authorized to surrender or pay to the Great Western Beet Sugar Company the $1,500 deposited with him as cashier of said bank, or turn over the note also deposited. Under the facts of this case, Cannon acted for the bank and had no authority to pay out the money or turn over the note, and did so at the risk of the bank, and the bank is liable to the plaintiffs for whatever damages they may have sustained by reason of the breach of this contract. As between the bank and these plaintiffs, the bank had no right to attempt to substitute other conditions and provisions, and force the plaintiffs to accept the same, although not provided for in said contract, and for these reasons, in my opinion, the judgment should be *affirmed.*